**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO: SA:17-CR-00031-XR** |
| | ) | |
| **MICHAEL J. BADGETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING
### OF DEFENDANT MICHAEL J. BADGETT

Defendant Michael J. Badgett (hereinafter referred to as "Badgett") is scheduled to be sentenced on January 10, 2018, having pleaded guilty to three counts of willful failure to file federal income tax returns for the tax years 2010 through 2012. For three years, Badgett failed to file his tax returns, resulting in a tax loss to the United States of approximately $5,391,464. Instead of filing his tax returns and paying the taxes he owed, Badgett spent an exceedingly large amount of money on personal expenses, such as a 60-acre ranch, a Chevrolet Corvette, and a condominium on the Riverwalk here in San Antonio.

As is discussed below, the government requests that the Court, after due consideration of the factors under 18 U.S.C. § 3553(a), including the Sentencing Guidelines, impose on defendant Badgett a total sentence for the three counts of 27 months of imprisonment followed by one year of supervised release. As a condition of release, Badgett should be ordered to pay restitution to the United States Internal Revenue Service ("IRS") for the tax loss of $5,391,464 plus any accrued interest.

## I.   __Background__[1]

From about January 2009 through March 2011, Badgett was employed as the Managing Director of a secure housing development in Kabul, Afghanistan ("Company #1").  Although Company #1 was an Afghan company, a number of its clients were United States government contractors involved in the U.S. reconstruction efforts in Afghanistan.

In about January 2009, in order to cater to clients in the United States, Badgett opened a bank account at JP Morgan Chase in the United States ("Chase Account").  Instead of sending money overseas, Company #1's clients from the U.S. made payments to Company #1 directly to the Chase Account.  Company #1 also transferred proceeds from its overseas bank accounts to the Chase Account on a monthly basis.

From January 2010 to December 2012, Badgett, the only authorized signature on the Chase Account, made personal expenditures of approximately $3,503,150, $7,779,650 and $3,448,322 (respectively) from the Chase Account, and continued to make personal expenditures through 2013 (although he did not work for Company #1 after March 2011).

In about March 2011, when Badgett left employment with Company #1, one of its partners ("Partner") agreed to pay Badgett $16,666,000, minus funds already provided to Badgett through the Chase Account.  Although Badgett was not legally an owner of Company #1, Badgett assisted the Partner in securing contracts with the U.S. government and contractors, along with making Company #1 a successful enterprise.

At all relevant times, Badgett was married, and had been so since at least 2009.  In tax year 2010, Badgett resided in Afghanistan.  At that time, the Austin Service Center in the Western District of Texas processed all tax returns for United States citizens living abroad.  In

---

[1]  The discussion below is taken from the Factual Basis for the Guilty Plea in this matter.  Dkt. No. 9.

about March 2010, Badgett purchased a residence in Spring Branch, Texas, in the Western District of Texas.  In about June 2011, Badgett left Afghanistan and made the residence in Spring Branch his permanent residence.  Despite receiving reportable income, and being required to file federal tax returns in the Western District of Texas, Badgett did not file a Form 1040 with the IRS for the tax years 2010, 2011 and 2012, at the time required by law.

During those years, Badgett knew he was required to file those federal tax returns.  In about April 2010, Badgett hired a CPA firm to assist him in tax planning.  A partner of the CPA Firm ("the CPA") told Badgett that he needed to get up to date on his tax returns and file Foreign Bank Account Reports before the CPA could move forward on tax planning.  The CPA also told Badgett he needed to report all worldwide income, and warned him as to what could happen if defendant did not file his returns and reports.  The CPA also sent Badgett information on the IRS Voluntary Disclosure Program and encouraged Badgett to apply for it.  Badgett, however, stopped communicating with the CPA Firm.

In December 2012 and May 2013, Badgett's sister, who owned a tax preparation service, prepared Forms 1040 for the tax years 2010-2012 for Badgett, but Badgett did not file the Forms 1040 with the IRS for those years.

Badgett has tax knowledge and has prepared and filed his own Forms 1040 in the past. On or about January 28, 2015, Badgett told IRS Special Agents that he worked as a tax preparer in the past and knew how to prepare his own tax returns.

In total, Badgett, whose filing status was Married Filing Separately, received total taxable income for tax years 2010-2012 of $1,616,897, $3,834,168 and $1,672,828, respectively.  The tax loss to the United States government for Badgett individually for those tax years was $623,497, $1,444,885, and $627,350, respectively.  For sentencing purposes, Badgett is also

responsible for the tax liability of his wife.  Accordingly, the total tax loss to the United States

for 2010-2012 was $1,246,994, $2,889,770 and $1,254,700, respectively, for a total tax loss of

$5,391,464.

    **II.**    **The Sentencing Guidelines Range and Plea Agreement**

In the Plea Agreement, ¶ 9a, the parties agreed that, because the three counts involve

substantially the same harm, the counts shall be grouped into a single Group.  The parties further

agreed that the total offense level applicable to the defendant's offense conduct is Level 21.  *Id.*

This level is based on the following Stipulated Sentencing Guidelines Calculation:

        Base offense level, see U.S.S.G. §§ 2T1.1(a)(1), 2T4.1      24

        Expected Adjustment under U.S.S.G. § 3E1.1(a) & (b)      <u>-3</u>

        TOTAL                                        **21**[2]

Therefore, with Badgett being in Criminal History Category I, his Sentencing Guidelines

Range for the willful failure to file federal tax returns is 37 to 46 months and a fine of $15,000 to

$150,000.[3]  *Id.*, ¶ 9c.  The parties understand that the statutory maximum is 36 months.  *Id.*  The

Court, however, is not bound by the Guidelines stipulations.  *Id.*, ¶ 12.

    **III.**    **The 18 U.S.C. § 3553(a) Factors Support a Sentence in the Guidelines Range**

When fashioning a sentence, courts should consider, among other things, (1) the nature

and circumstances of the offense and the history and characteristics of the defendant; (2) the

need for the sentence to reflect the seriousness of the offense, providing just punishment, and

---

[2]  The parties further agreed "that under the Sentencing Guidelines neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Court consider such a departure or adjustment."  Plea Agreement, ¶ 9c.  As part of the parties' agreement, however, Badgett reserved the right to argue for a downward variance based on the factors associated with U.S.S.G. § 3553(a).  *Id.* ¶ 10.

[3]  The calculations in the Presentence Investigation Report ("PSR") are the same as agreed to by the parties, except as to the fine.  In the PSR, the fine range is correctly stated as $7,500 to $75,000.  PSR ¶ 65.

adequately deter criminal conduct; (3) the Sentencing Guidelines and related policy statements; and (4) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). In this case, these factors support the custodial sentence requested by the government.

Badgett failed to report a tremendously large amount of income over a three-year period resulting in federal tax loss of over $5.3 million. As discussed above, Badgett was aware of his responsibility to report this income. Badgett's conduct warrants just punishment, both as to the conduct itself and to promote respect for the United States tax laws.

Further, a strong sentence is needed to deter others from similar conduct. This case involves, in part, income earned overseas in a warzone, income that may be difficult for the government to detect. The type of conduct at issue here is the type that is especially susceptible to deterrence; it is thought-out and calculated criminal conduct. *United States v. Martin*, 455 F.3d 1227, 1279 (11th Cir. 2006) (recognizing that some crimes, being more "rational, cool, and calculated than sudden crimes of passion or opportunity," are "prime candidates for general deterrence"). To that end, "the threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time." *Id.*

As stated in the Introductory Commentary to the Sentencing Guidelines provisions relating to tax violations, Chapter 2, Part T, while general deterrence is one of the prescribed goals of every sentencing, it occupies an especially important role in sentencing for criminal tax offenses because criminal tax prosecutions are relatively rare.

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a

criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. ch. 2, pt. T, intr. cmt.

A significant and fair sentence sends a clear message that the law requiring the payment of taxes must be followed, or there will be serious consequences. *See United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006) (finding no plain error where district court held that a primary sentencing factor was to "deter other similarly situated" individuals). The importance of imprisonment in tax cases was highlighted when the Eighth Circuit vacated a non-prison sentence in a $250,000 tax evasion case because the district court "failed to consider the importance of a term of imprisonment to deter others from stealing from the national purse." *United States v. Ture,* 450 F.3d 352, 358 (8th Cir. 2006).

Other cases involving lesser amounts of income support a sentence including incarceration. In *United States v. Patrick Shawn Kelley*, Case #5:16-cr-00015-RH (N.D. FL), the owner of a construction company which operated in Kabul, Afghanistan, by failing to file federal income tax returns and taking active steps to conceal assets, evaded approximately $109,735 in taxes on approximately $521,120 in taxable income for 2010 and $74,380 in taxes on approximately $434,886 of taxable income in 2011. *Id.* at Dkt No. 1 (Indictment, counts 2 and 3), Dkt. No. 23 (Factual Basis). The defendant was sentenced to 15 months in prison on counts 2 and 3 to run concurrently. *Id.* at Dkt. No. 39, page 3 (Judgment). In *United States v. Willis Epps*, Case #5:16-cr-00019-MNH-HGD-1 (N.D. AL), a former contracting officer for the U.S. Army Contract Command at Redstone Arsenal in Alabama knowingly signed and filed a false income tax return for 2013 in which he failed to report $56,250 in income. *Id.* at Dkt. No. 1 (Indictment). That defendant was sentenced to five months of imprisonment, five months of home confinement, and ordered to pay restitution of $16,470. *Id.* at Dkt. No. 59, pages 2 and 5

(Judgment).  The sentence was at the low end of the Sentencing Guidelines Range.  *See id.* at Dkt. No. 55 at 8 (Government's Sentencing Memorandum)

Considering the above factors, the need to sufficiently and justly punish Badgett, promote respect for the law, and deter future criminal conduct, the government requests a sentence of 27 months imprisonment.

### IV.     Restitution

The Plea Agreement, ¶ 16, specifies that the Court may order Badgett to pay restitution pursuant to 18 U.S.C. § 3663.  As noted in the Presentence Investigation Report, ¶ 67, restitution should be imposed as a condition of release, not as a part of the sentence.

### V.     Conclusion

For these reasons, the government respectfully requests that the Court impose for the three counts a total custodial sentence of 27 months of imprisonment followed by one year of supervised release.  As a condition of release, Badgett should be ordered to pay restitution to the IRS for the tax loss of $5,391,464 and any accrued interest.

Respectfully,

Date:  January 3, 2018

SANDRA L. MOSER
Acting Chief, Fraud Section

/ s  /  *Daniel P. Butler*

By:     _____

DANIEL P. BUTLER
D.C. Bar No. 417718
Trial Attorney, Fraud Section, Crim. Div.
United States Department of Justice
1400 New York Ave., N.W., Room 4404
Washington, D.C.  20530
(202) 307-2184
Daniel.Butler2@usdoj.gov

GOVERNMENT'S SENTENCING
MEMORANDUM                    7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd of January 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  Also on this date, I sent by email a copy of this memorandum to the attorney of record for the defendant.

/ s /  *Daniel P. Butler*

_____

Daniel P. Butler
Trial Attorney, Fraud Section, Crim. Div.
United States Department of Justice